Filed 6/15/23  Riojas v. Marriott Resorts Hospitality Corp. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL RIOJAS, | D080379 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. PSC2000403) |
| MARRIOTT RESORTS HOSPITALITY CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Southern California Labor Law Group, Michael Zelman, Taylor M. Prainito and Parth N. Shah for Plaintiff and Appellant.

Foley & Lardner, Krista M. Cabrera and Kevin Jackson for Defendant and Respondent.

Michael Riojas was a driver for Marriott Resorts Hospitality Corporation (Marriott) in Palm Springs. He sued for age discrimination after being passed over for a promotion. That lawsuit settled, and Riojas decided to remain at Marriott. In the ensuing five months, Marriott hired a younger person for the supervisor role, gave Riojas what he believed to be pretextual writeups, and ultimately terminated his employment. Riojas again sued Marriott for age discrimination, retaliation, and harassment under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12940 et seq.), whistleblower retaliation (Lab. Code,[1] § 1102.5, subd. (b)), and associated derivative claims. He also claimed Marriott was liable for the intentional infliction of emotional distress (IIED).

The trial court granted the motion for summary judgment and entered judgment in favor of Marriott. Given the broad language of the release that accompanied the prior settlement, the court concluded that Riojas could not rely on any presettlement conduct by Marriott. Focusing solely on Marriott's alleged postsettlement conduct, the court reasoned that he failed to show he was fired due to his age or protected complaints rather than performance reasons. The court also rejected the IIED claim, concluding Riojas could not show that Marriott's conduct was extreme or outrageous.

Riojas appeals the judgment, which we reverse in part. This was a motion for summary judgment by the defendant, yet the trial court failed to adjust the usual burden-shifting framework for discrimination claims. While a plaintiff normally has the burden *at trial* to prove a prima facie case of discrimination or retaliation under FEHA, a defendant moving for summary judgment must show the plaintiff *cannot* make a prima facie case or

---

[1]    Further undesignated statutory references are to the Labor Code.

2

overcome a defense. The court also erred in concluding that Riojas could not rely on *facts* predating the prior settlement. Although Riojas indeed released any *claims* relating to those facts, he did not forego the right to rely on those earlier facts to show that postsettlement writeups might have been pretextual. Correcting these foundational mistakes, we conclude that summary adjudication is appropriate solely as to the causes of action for harassment under FEHA and IIED. In all other respects, there remain triable issues of material fact precluding summary adjudication.

## FACTUAL AND PROCEDURAL BACKGROUND

Riojas began working for Marriott's Desert Springs Villas resort as a limousine driver in 2015. He sued for age discrimination in 2017, settled that case in 2018, was terminated later that year, and filed this lawsuit in 2020. We summarize his employment history, claims, and summary judgment proceedings below.

A. *Claims and Allegations*

When hired as a driver in September 2015, Riojas was 55 years old and had a commercial trucking background. He received positive performance evaluations in 2015 and 2016. In February 2017, the supervisor of Marriott's transportation department left the company. Riojas took over many of those duties such as collecting vehicle records, ensuring proper vehicle maintenance, reviewing staff meal breaks, and reporting any issues to transportation manager Levi Hanifen. When Marriott posted an opening for the transportation supervisor position, Riojas immediately expressed interest. Head front desk manager Anjanae Miller seemed discouraging, but told him he could " 'go ahead and apply online.' " Riojas came to believe that

3

Hanifen and Miller were more interested in younger, less qualified candidates.

Riojas interviewed in March 2017 with Hanifen and assistant front desk manager Danielle Michaud. Passing him over for someone "significantly younger," Hanifen told Riojas the chosen candidate had more experience with California Highway Patrol (CHP) and the Department of Transportation (DOT). This did not make sense to Riojas because he had twenty years of relevant experience working with CHP and DOT regulations. He felt age had something to do with it when Miller told him Marriott was looking for " 'fresh eyes.' "

The person initially selected did not ultimately take the position. Riojas complained about what he perceived to be an unfair hiring process to Marriott general manager Bill Gunderson, while continuing to express interest in the role. But he perceived that his complaint prompted negative performance reviews. In "stark contrast" to previous evaluations, Michaud and Hanifen described him in 2017 as " 'not a team player' " and lacking in maturity without offering examples. When Riojas again applied for the transportation supervisor position in May 2017, he was not given an interview.

Hanifen and Michaud instead hired Justin Matteson and asked Riojas to help train him. They described Matteson as an ex-Marine who had worked in transportation logistics. As it turned out, Matteson was 21 years old, did not have a commercial driver's license (CDL) and had never worked in the hospitality industry. Riojas felt that Marriott managers valued his youth above all else.

Noticing Marriott's pattern of hiring younger, unqualified candidates, Riojas sued Marriott in August 2017 for age discrimination. In September,

4

he told Gunderson that various employees had been driving Marriott vehicles without a CDL in violation of company policy and state law. Gunderson agreed to investigate but seemed upset at Riojas for making the complaint. Two similar complaints to front desk manager Henry Noll went ignored.

In February 2018, Riojas received verbal coaching for allegedly calling Marriott's director of operations Tanner Newton "stupid." Riojas denied the accusation, claiming the witnesses were all defendants in his age discrimination lawsuit. Riojas received a negative performance evaluation in March 2018—while he was rated a "strong performer" in his actual job duties, he was deemed an "under performer" in the "demeanor" subcategory due to his relationship with management.

Riojas settled his age discrimination lawsuit in May 2018. He told Gunderson afterwards that he wished to stay at Marriott. Gunderson told him that he could apply for a promotion a year after his July 2017 writeup for arriving late to work cleared.

In early June, Riojas met with Gunderson and again expressed interest in the supervisor position. Gunderson said he could not be considered due to uncleared writeups.[2] Riojas complained that those writeups were pretextual and retaliatory; Gunderson raised his voice and shut the conversation down. In July, Marriott hired someone younger than Riojas as transportation supervisor, even though he had neither a CDL nor past supervisory experience.

Later in July, Riojas received a written warning and was berated in front of other employees for leaving vehicle keys in a company vehicle that

---

[2]     Pursuant to Marriott's Promotion and Transfer Eligibility policy, hourly employees needed to have no written warnings for either 6 or 12 months to be considered for a promotion, depending on whether they were classified as field or corporate workers.

was temporarily parked outside. Riojas felt that more egregious errors by other employees were handled differently and suspected he was being retaliated against based on his earlier age discrimination lawsuit. He filed a complaint with the EEOC on October 10, 2018, and soon thereafter received another written warning and three-day suspension for misplacing a vehicle's fuel key during a shift. On October 16, Marriott terminated his employment based on the three uncleared writeups (calling Newton "stupid" in February 2018; leaving keys in the parked vehicle in July; and misplacing the fuel key in October). His termination led to lost wages, anxiety, depression, and weight loss.

Riojas sued Marriott and various managers in 2020, claiming he was passed over for a promotion, retaliated against, and treated differently on account of his age or age discrimination complaints. The court sustained demurrers to the original and amended complaints, relying on the May 2018 release as precluding Riojas from asserting claims that rested on presettlement conduct.[3] The operative second amended complaint asserts the following seven causes of action: (1) age discrimination in violation of FEHA; (2) age-based harassment in violation of FEHA; (3) retaliation in violation of FEHA; (4) failure to prevent the foregoing violations under FEHA; (5) whistleblower retaliation (§ 1102.5); (6) wrongful termination in violation of public policy based on the foregoing; and (7) IIED. In January 2021, Riojas voluntarily dismissed his claims against individual Marriott managers, leaving only the claims against the company.

---

[3]   In settling the 2017 lawsuit, Riojas agreed to release Marriott "from all claims or rights of any kind" and "forever giving up and waiving all claims and rights, known or unknown . . . based on any conduct that occurred on or before the date Plaintiff signs this agreement."

6

B.    *Marriott's Motion for Summary Judgment or Adjudication*

Marriott moved for summary judgment or, in the alternative, summary adjudication.  It argued that Riojas could not rely on presettlement conduct given the breadth of the release contained in the May 2018 settlement agreement.  Once that evidence was excluded, Marriott suggested there were no triable issues because Riojas was terminated for accumulating too many disciplinary writeups.  It made tailored arguments as to each of Riojas's claims.

As to the discrimination and retaliation claims, Marriott suggested Riojas could not meet *his burden* to establish a prima facie case by showing that he was terminated on account of his age or protected activity.  Riojas offered no statements or conduct at his deposition to support his claim that he was fired *due to his age*.  "Notably," according to Marriott, "the person originally slotted to be hired into the position was actually over the age of 50."  Likewise, Riojas acknowledged that no one mentioned his various complaints in imposing disciplinary action.  Marriott did not receive notice of Riojas's EEOC complaint until November 6, 2019—21 days after terminating him.  To the extent Riojas could establish a prima facie case of discrimination or retaliation, Marriott claimed the evidence conclusively proved it had legitimate, nondiscriminatory and nonpretextual reasons for firing him.

As to harassment, the complaint seemed to rest this claim on two incidents in June and July 2018—once when Gunderson became irate, and another when Hanifen berated him for leaving the keys in the car.  Marriott argued Riojas offered no evidence to suggest that these incidents were motivated by age animus.

Marriott followed a similar approach as to the whistleblower claim under section 1102.5.  It urged that this cause of action, too, was barred

7

because it rested on facts predating the May 2018 settlement release. To the extent it was based on the later-filed EEOC complaint, Marriott claimed it did not receive notice of that complaint until 21 days *after* terminating Riojas.

Because the primary claims failed, Marriott argued that the derivative claims for failure-to-prevent discrimination, harassment, or retaliation under FEHA and common law wrongful termination also failed. Finally, Marriott argued Riojas could not show outrageous conduct to survive worker's compensation preemption and demonstrate IIED.

Marriott submitted three declarations in support of its motion. Kimberly Bell, an area human resources director for Marriott, provided job posting and hiring details about the transportation supervisor position. Marriott general manager Bill Gunderson described his June 2018 meeting with Riojas. Finally, Kamran Mirrafati submitted a counsel declaration attaching relevant court orders, deposition excerpts, and e-mails produced in discovery.[4]

In sum, Marriott's evidence showed multiple disciplinary actions and concerns as to Riojas's performance between 2017 and 2018. Riojas bristled in January 2017 when asked to deliver a toothbrush to a hotel guest, quipping something about being directed to act as "room service." In March, May, and July 2017, he received a "[c]oaching and [c]ounseling" session, a verbal warning, and a written warning for being late and not clocking in or out properly.[5]

---

[4]    Riojas objected on foundation grounds as to nearly all the e-mail exhibits attached to Mirrafati's declaration. We address in the discussion Riojas's claim that Marriott was erroneously allowed to introduce unauthenticated exhibits into evidence.

[5]    Marriott's Progressive Discipline policy began with coaching and counseling and progressed to verbal and then written warnings. Managers

The warnings continued into 2018. In January he received coaching and counseling for unprofessional conduct after calling operations director Newton "stupid."[6] Riojas received a written warning in February 2018 for sending an e-mail insinuating that he had proof Newton made out with the front desk manager during a work trip.[7] He received a separate written warning in July 2018 for leaving a vehicle parked and unattended with the key in the ignition. That same month, transportation supervisor Eugenio Rizo had a conversation with Riojas about "following directions and not making his own decisions for other employees." The final written warning came on October 11, 2018, when Riojas misplaced a fuel key for a company vehicle. Suspension was automatic as it was his third warning.

Pointing to Riojas's deposition testimony and e-mail exhibits, Marriott argued that age or the prior lawsuit never came up in discussing promotion or disciplinary actions. Riojas sent numerous e-mail complaints in 2017 and 2018 about staff driving without CDLs, management concerns, and meal break issues—but he never complained of age discrimination. The company

---

had to consider previous counseling or discipline, set clear expectations for employees, and ensure consistent enforcement across employees.

[6]    According to the disciplinary form, Newton reported Riojas for improperly driving a Marriott shuttle with the "no service" sign lit. Riojas told other staff that he was merely transporting a disabled guest around the property and wanted to make clear that he was not on a bus route. When questioned why Newton had reported him, Riojas threw his hands in the air and allegedly said "He's stupid." Riojas denied making the comment and refused to sign the discipline form, but security footage corroborated the reported hand gestures.

[7]    Riojas refused to sign this disciplinary form and would explain at his deposition that he was simply positing the hypothetical without suggesting it had occurred.

received the EEOC's right-to-sue determination on November 6, 2018, weeks after terminating Riojas on October 16.

C.    *Riojas's Opposition*

Riojas opposed the motion, claiming summary judgment was rarely appropriate in employment discrimination and retaliation cases, and that this case was no exception. When he started at Marriott, he was described as a hard worker and team player. Yet when he tried to seek a promotion in 2017, Marriott said they needed " 'fresh eyes' " and passed him over in favor of younger, less qualified candidates. After settling his first age discrimination lawsuit, Marriott appeared to create new disciplinary policies that applied only to him to force him out.

Riojas submitted three declarations with his opposition brief. His own was the most extensive. Riojas explained that after starting in September 2015, he "regularly received annual performance evaluations that categorized me in the top fifteen (15) percent" with positive comments about his work ethic. This included favorable reviews in April 2016 and February 2017. When Riojas obtained a CDL in 2016, he noticed Marriott staff routinely driving commercial-rated vehicles off the property without a CDL.

He applied for the supervisor position in March 2017, but was passed over for someone younger and told by Miller that Marriott wanted " 'fresh eyes' " Riojas followed up with Gunderson, who looked at his resume and "could not understand why [he] wasn't offered the position." The position ultimately was not filled because the selected individual failed a background check. Riojas applied again in June but was not interviewed. By late June there were rumors that a very young supervisor had been hired.

10

In early July 2017, Riojas received his first writeup for tardiness. In discussing the writeup with him, Hanifen advised him that he no longer qualified for the supervisor position. By mid-July, Justin Matteson started as supervisor—he was 21 years old, lacked a CDL, and had no supervisory experience. Riojas filed an age discrimination lawsuit in August and soon felt that his managers "were looking for a reason to give me a write up because of my lawsuit and complaint of age discrimination." Front desk manager Michaud snapped at him when he pointed out a mistake in the vehicle log. E-mails he sent raising safety concerns about staff driving without CDLs went ignored. Called into a meeting in Newton's office in February 2018, Gunderson raised his voice at Riojas and accused him of not understanding CDL laws.

Matteson was fired in January 2018. Around this time, Riojas started noticing that he received periodic writeups, which he felt were an effort to prevent his advancement. He felt he had to walk on eggshells. He tried to contest calling Newton stupid by posing a hypothetical in an e-mail about seeing Newton make out with another employee. Rather than investigate his claim of falsity, *Riojas* was written up for making a false allegation against Newton.

Things did not improve after the lawsuit settled. Riojas met with Gunderson and again raised safety concerns about staff drivers not having CDLs. Gunderson raised his voice in response. When Riojas brought up the promotion, Gunderson replied that he would not be considered for the supervisor role until his February 2018 writeup cleared. Marriott posted the position a week later and did not let him apply. In June, they hired Rizo, who was "only in his 30s" and lacked supervisory experience.

11

Riojas received two more written warnings. While all his colleagues routinely left vehicles unattended with the keys in the ignition for short periods, only Riojas was ever issued a written warning for it. That writeup in July 2018 made him feel anxious and depressed, as if Marriott was making up rules and policies to fire him for his age or age discrimination complaints. He found it hard to focus on work with his supervisors nitpicking him. Riojas complained of age discrimination to Rizo and human resources manager Bell, but no investigation followed. The final straw came in October 2018. He lost a fuel key for a vehicle he was servicing and received a written warning, a suspension, and ultimately termination. Rizo was never even given a writeup after losing an entire set of master keys just months earlier. Riojas experienced depression, anxiety, and increased stress as a result of his perceived mistreatment.

Marriott driver Joel Bote submitted a supporting declaration. In it he described Riojas as an excellent employee and coworker—polite and always willing to help. He noticed that Riojas started to be picked on by supervisors after he sued for age discrimination. It seemed like "[t]hey were watching Riojas closely and tried to find any reason to give him a write-up and fire him." Bote noted that while Riojas was written up for losing a fuel key, a younger coworker (Rizo) received no writeup for losing a master key. Shuttle drivers routinely left vehicles unattended with keys in the ignition to use the bathroom, help customers bring their bags, or get something from the clubhouse. The property was secure with cameras everywhere; at no point was Bote ever informed of a policy against leaving keys in a vehicle, and he was never disciplined for doing it.

Finally, Riojas submitted a declaration by his attorney Parth Shah attaching deposition transcripts, discovery responses, performance evaluations, and various e-mail exchanges produced in discovery. Riojas also objected on foundation grounds to most exhibits attached to Marriott's counsel declaration.[8]

D.    *Ruling*

Following argument, the court granted Marriott's motion for summary judgment. Because Riojas released all prior claims in signing the settlement agreement, it reasoned that "the only facts Plaintiff can use in this case are those occurring after May 21, 2018." Focusing on those allegations alone, the court concluded that Riojas did not make a prima facie case of discrimination because he "failed to provide any evidence that he was performing his job satisfactorily" after that date.

Turning to the remaining FEHA claims for harassment and retaliation, as well as the whistleblower claim (§ 1102.5), the court concluded they failed for the same reason: Riojas failed to show that his termination was due to his age or various internal or external complaints. Because the primary claims failed, the court further concluded the derivative claims for failure to prevent discrimination, harassment, and retaliation under FEHA and the common law claim for wrongful termination in violation of public policy likewise failed. It determined that these failures—as well as Riojas's failure to prove extreme or outrageous conduct—prevented him from prevailing on his IIED cause of action.

---

[8]    On reply, Marriott claimed these objections lacked merit but nonetheless submitted supplemental declarations by Bell and Gunderson authenticating the challenged exhibits. Riojas objected that these declarations were untimely.

Having granted Marriott's motion in full, the court entered judgment in its favor.

DISCUSSION

We review a summary judgment ruling de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) Summary judgment is proper if the record demonstrates there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "In performing our review, we view the evidence in a light favorable to the losing party . . . , liberally construing her evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859 (*Serri*).) After addressing evidentiary issues, we turn to the merits and reverse the trial court's ruling in part. As we explain, summary adjudication is appropriate only as to the causes of action for harassment under FEHA and IIED. Marriott failed to meet its burden as to all other causes of action.

A.  *Evidentiary Objections*

1.  *Riojas's Objections*

As noted, Marriott submitted an attorney declaration attaching various e-mail exhibits it produced during discovery. Riojas challenged these exhibits on foundation grounds in objections 1 through 24. He noted that the attorney was not a Marriott employee, did not author the e-mails, was not a custodian of record, and did not otherwise lay proper foundation. Marriott submitted

14

declarations by Bell and Gunderson with its reply brief authenticating the challenged exhibits. Riojas objected that these declarations were untimely.

During the hearing on Marriott's motion, Riojas requested a ruling on his evidentiary objections. The court confirmed that in light of the reply declarations, Riojas was now arguing that the foundation was untimely. The court took the matter under submission but did not rule on Riojas's objections. In so doing, the court erred. It had a duty to rule on properly presented evidentiary objections. (*Reid v. Google* (2010) 50 Cal.4th 512, 532.) Because it failed to do so, we presume those objections were overruled and the evidence was considered. (*Id.* at p. 534.) We review that outcome for abuse of discretion, subject to the overarching principle that the moving party's submissions are considered strictly, while the opponent's submissions are viewed liberally. (*Mackey v. Board of Trustees of California State University* (2019) 31 Cal.App.5th 640, 657 (*Mackey*).)

Riojas maintains the court should have sustained objections 1 through 24 because Marriott "did not properly authenticate documents submitted into evidence." These objections challenged the authenticity of e-mail chains (Exhs. 5–10, 14, 20–21, 25–28), corporate policy and disciplinary records (Exhs. 13, 15, 17, 19, 22–24, 35), and internal notes describing staff conversations with Riojas (Exhs. 16, 18, 36). To the extent these exhibits were authenticated in Marriott's supplemental declarations on reply, Riojas renews his argument that those filings were untimely. We conclude there was error in admitting just four e-mails that lacked proper foundation.

"Authentication of a writing is required before it may be received in evidence." (Evid. Code, § 1401, subd. (a).) This means evidence sufficient to sustain a finding "that the document is what it purports to be." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321; see Evid. Code, § 1400.) In the

15

summary judgment context, "[s]upporting and opposing affidavits or declarations shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." (Code Civ. Proc., § 437c, subd. (d).)

There is no abuse of discretion in allowing supplemental declarations on reply to authenticate previously offered exhibits. (See *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1182−1183.) In his supplemental declaration, Gunderson sufficiently authenticated exhibits 5–10 and 26–27 as e-mails he sent or received. Bell stated that exhibits 13 to 25, 28, 35, and 36 were records "kept in the ordinary course of the regularly conducted business activities of [Marriott]" and that it "was, and is, the regular practice of [Marriott] to keep such records." Her declaration sufficiently authenticated business records maintained by Marriott (Exhs. 17, 23, 35), documents kept in Riojas's personnel or investigation files (Exhs. 13, 15–16, 18–19, 22, 24, 36), and an e-mail sent from Newton to Bell (Ex. 25).

However, Bell lacked personal knowledge to authenticate four e-mail exhibits referenced in her declaration. These were e-mails she neither sent nor received, which she did not list as being maintained in Riojas's personnel file. Exhibit 14 was a September 2017 e-mail from Hanifen to Newton summarizing conversations with Riojas and indicating that Riojas never mentioned feeling discriminated against in discussing his promotion denial. Exhibit 20 was a July 2018 e-mail from Rizo stating he had spoken with Riojas about the need to follow directions. Exhibit 21 was an e-mail from Johnny Arispe to a general listserv indicating that Riojas had belatedly and

improperly requested time off.  Finally Exhibit 28 was an e-mail chain from Rizo to several individuals in October 2018 regarding the fuel key Riojas lost.

These four exhibits were originally submitted with Marriott's counsel declaration, with attorney Kamran Mirrafati indicating they had been produced by his client in discovery.  As a general rule, attorney declarations cannot rely on facts outside the attorney's personal knowledge.  (*Maltby v. Shook* (1955) 131 Cal.App.2d 349, 353; *Keniston v. Am. Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 812−813.)  Just because a document was produced in discovery by the opposing party does not necessarily render it authenticated.  (*Serri, supra,* 226 Cal.App.4th at p. 855.)  "As with any fact, the authenticity of a document can be established by circumstantial evidence." (*Hooked Media Group, Inc. v. Apple, Inc.* (2020) 55 Cal.App.5th 323, 338.)  Counsel can authenticate e-mails produced by opposing counsel in discovery that bear "clear indicia" that they are what they purport to be.  (*Ibid.* [distinguishing *Serri*].)  But here, unlike in *Hooked*, the four exhibits at issue were not produced by opposing counsel.  Marriott does not offer any basis to conclude that its counsel's declaration could properly authenticate e-mail exhibits produced by Marriott during discovery.  We accordingly conclude these exhibits were inadmissible and should have been excluded.

2.     *Marriott's Objections*

Marriott objected to Riojas's declaration, stating that "facts and allegations predating the May 21, 2018 Settlement Agreement are irrelevant as the Court has already ruled that Plaintiff cannot rely on any of the conduct or events that occurred prior to May 21, 2018 as the basis for his FEHA claims."  Prior demurrer rulings barred Riojas from basing his claims on "allegations that formed the basis for the previous lawsuit."  As those prior rulings explained, while Riojas could "file suit based upon actions which

17

occurred after he settled the first action," he could not "file suit against [Marriott] for claims he released." The trial court agreed with Marriott and concluded that "the only facts Plaintiff can use in this case are those occurring after May 21, 2018" and looked to whether those facts showed satisfactory job performance at the time of his termination.

On appeal, Riojas argues that he only released *claims* that existed as of May 2018, and not his right to rely on underlying facts to explain later events. He asserts that the 2017 lawsuit alleged a failure to promote, whereas this lawsuit centered on his termination and harassment *after* the May 2018 settlement. Marriott, by contrast, points to the broad language contained in the May 2018 release. In signing the prior settlement, Riojas agreed to release Marriott "from all claims or rights of any kind arising before or through" the settlement date. He acknowledged that he was "forever giving up and waiving all claims and rights, known or unknown . . . based on any conduct that occurred on or before [that] date . . . ." This waiver applied even "if, hereafter, Plaintiff discovers facts different from or in addition to those that Plaintiff now believes to be true." Moreover, he voluntarily dismissed the 2017 lawsuit with prejudice and was thus "forever precluded from relitigating any of the facts, issues, or claims giving rise to his 2017 Lawsuit in a subsequent action against [Marriott]." Marriott argues there is no legal support for the proposition that the settlement agreement released " 'claims' " rather than " 'facts.' " It further suggests that permitting an employee to rely on presettlement conduct in a subsequent action would, as a policy matter, incentivize employers to condition settlement on the employees' departure from the firm.

Riojas has the better argument. By releasing all claims and rights, Riojas did not give up his right to rely on prior facts to provide *context* for his

current claims. That is all Riojas seeks to do here. He states that he was passed over for promotion in favor of younger candidates in 2017 not to assert a FEHA claim and seek damages for that past treatment, but rather to explain the allegedly discriminatory, harassing, and retaliatory treatment he faced after he complained and filed suit. He offers his earlier performance evaluations from 2016 and 2017 to suggest that the poor performance evaluation and writeups in 2018 were *pretextual*. In doing so, Riojas does not assert a *claim* that was released in the May 2018 settlement but rather offers facts predating the release to interpret or construe claims resting on conduct that happened after.

B.      *Discrimination and Retaliation Under FEHA*

   1.      *Additional Background*

Turning to the merits, we begin with the pleadings, which frame the issues on a motion for summary judgment. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) A defendant need only negate a plaintiff's theories of liability *as alleged in the complaint*. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493; see *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648.)

Riojas alleged that Marriott "discharged older employees with greater frequency than younger employees, hired fewer employees who were older than 40, and gave better jobs and benefits to younger employees." After the May 2018 settlement, Gunderson told him that he could apply for a promotion in July when a tardiness writeup from the previous year cleared. Riojas expressed interest again in early June but was told he would not be considered because of his past writeups. When Riojas remarked that past writeups were pretextual, Gunderson became irate and shut the conversation down. Gunderson approached Riojas in the break room soon thereafter and

19

told him that someone else had been hired. Eugenio Rizo was far younger than Riojas and lacked prior supervisory experience.

In the months that followed, Riojas claimed he was unfairly singled out in ways that other employees were not. Although Marriott said he was fired for accumulating three writeups, Riojas felt these writeups were retaliatory and pretextual. He believed Marriott's hiring decisions and staff comments "exhibited ageist motivations, intentions, and consciousness" and that the real reason he was fired was "because of his age."

His retaliation claim was similar. Riojas alleged his written warning in July 2018 was in retaliation for his prior lawsuit. Immediately after he complained of age discrimination to the EEOC in October, he was again written up and terminated for losing a fuel key when other similarly situated individuals did not receive the same treatment.

In moving for summary judgment, Marriott argued that Riojas's age discrimination claim failed "because he has no evidence of a causal connection" between his age and lack of promotion or termination to state a prima facie case. Marriott noted that Riojas was ineligible to apply for the position because of his disciplinary record and that this record is the only reason he was ultimately fired. Although the person ultimately hired in July 2018 was younger than Riojas, Marriott claims "the person originally slotted to be hired into the position was actually over the age of 50."

Marriott makes similar arguments against Riojas's retaliation claim – it failed "because he has no evidence of a causal connection between his employment termination and his engagement in any protected activity." At his deposition, he could identify no conversations about his lawsuit, internal complaints, or any EEOC complaint. These complaints never came up in meetings relating to his disciplinary actions. Moreover, Marriott did not

receive notice of Riojas's EEOC complaint until three weeks after terminating him.

To the extent Riojas could establish a prima facie case of discrimination or retaliation, Marriott maintained that those claims nevertheless required dismissal because he was fired for legitimate business reasons that were not pretextual.

The trial court accepted these arguments. Finding Riojas had not demonstrated that he was fired because of his age or age-related complaints rather than poor job performance, the court concluded he could not state a prima facie case. As we explain, the court misapplied the applicable standard. Viewing the evidence in the light most favorable to Riojas, we conclude Marriott did not meet its moving burden to show there was no triable issue of material fact as to whether Riojas was passed over for promotion, disciplined, and ultimately fired for discriminatory or retaliatory reasons.

2. *Legal Principles*

Because FEHA tracks federal employment protections, California courts adopt the burden-shifting framework applied by federal courts to federal employment discrimination claims. (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).) "[B]y successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Id.* at pp. 354–355.)

A plaintiff bears the initial burden to establish a prima facie case of discrimination—i.e., " ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion.' " (*Guz,*

21

*supra*, 24 Cal.4th at pp. 354–355.) "The specific elements of a prima facie case may vary depending on the particular facts," but a plaintiff must generally show that "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Id.* at p. 355.)[9]

A prima facie showing by the plaintiff creates a rebuttable presumption that discrimination occurred. (*Guz, supra,* 24 Cal.4th at p. 355.) That shifts the burden of proof to the employer to demonstrate a legitimate, nondiscriminatory basis for its employment action. (*Id.* at pp. 355–356.) If the employer sustains this burden, the plaintiff must either attack the proffered reasons as pretextual or "offer any other evidence of discriminatory motive." (*Id.* at p. 356.)

A similar burden-shifting framework applies to establish unlawful retaliation under FEHA. A plaintiff bears the burden to show protected activity, an adverse employment action, and a causal link between the two. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) "Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation." (*Ibid.*)

---

9    Age is a protected class under FEHA. (Gov. Code, § 12940, subd. (a).)

Critically important here, however, "any burden-shifting framework must account for the procedural posture of the case. The summary judgment statute places the burden on a moving defendant to show that 'one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action.' (Code Civ. Proc., § 437c, subd. (p)(2).) Only if a defendant meets that burden does the burden shift to plaintiffs to show the existence of a triable issue of material fact. [Citation.] As the party seeking summary judgment, [Marriott] ' "has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse . . . action was based upon legitimate, nondiscriminatory factors." ' " (*Mackey, supra,* 31 Cal.App.5th at p. 662.) " 'In this sense, upon a defendant's summary judgment motion in an employment discrimination action 'the burden is reversed . . . .' " (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1731, quoting *University of Southern California v. Superior Court* (1990) 222 Cal.App.3d 1028, 1036.)

This is where the trial court went wrong—it impermissibly placed the burden *on Riojas* to establish a prima facie case of discrimination and retaliation. Incorrectly reasoning that the settlement agreement precluded Riojas from relying on *facts* preceding May 21, 2018 (see *ante*), the court found that Riojas "failed to provide any evidence that he was performing his job satisfactorily" after that date and consequently "has not met his burden to support a *prima facie* case of age discrimination." It likewise found that Riojas had failed to show that his termination was due to his age or protected activity as required to prove retaliation. Properly placing the burden on Marriott to establish that Riojas *could not* make a prima facie showing, we reach the opposite conclusion.

23

### 3. *Analysis*

As the party moving for summary judgment, Marriott had to either demonstrate that Riojas could not show a prima facie case of age discrimination, or provide legitimate, nondiscriminatory reasons for any adverse actions Riojas alleged. As we explain, Marriott failed to carry its burden as to either the discrimination or retaliation claims.

As to the age discrimination claim, Marriott's submissions do not preclude a possible jury finding that Riojas was denied a promotion due to age bias. Riojas submitted evidence that he was qualified for the supervisor role—in 2017, Gunderson seemed surprised he was not selected after reviewing his resume—and Riojas assumed many of the duties of the transportation supervisor after she left. Gunderson told Riojas in May 2018 that he could apply for the role in July; said in June he would not be considered due to past writeups; and by July hired a much younger candidate in Rizo who lacked supervisory experience. Earlier, when Riojas applied for the promotion, he was passed over in favor of someone younger and was told it was because Marriott wanted someone with " 'fresh eyes' "

Marriott maintains Riojas was disqualified for promotion given his February 2018 writeup, but this merely creates a triable issue of pretext. Riojas denied calling Newton "stupid" and claimed he was disciplined in retaliation for filing his prior age discrimination lawsuit.[10] Greg Paulk in human resources questioned the propriety of writing up Riojas for this incident, telling Gunderson and Bell there was "no precedent for documenting this type of incident." Riojas was rated a "Strong Performer" in

---

[10] Although Riojas released his right to challenge the February 2018 writeup, he did not release his right to claim that this writeup did not provide a valid basis to deny him a promotion opportunity after May 2018.

the top 15 percent of Marriott employees for 2015 and 2016. After he filed an age discrimination lawsuit, he received a rating of "Under Performer" for demeanor in 2017, and perceived that his managers "were looking for a reason to give him a writeup." Bote concurred with Riojas that after the 2017 lawsuit, supervisors "started picking on Riojas even more."

Taken together, there remains a material question of fact as to whether Marriott denied him a promotion in the summer of 2018 for discriminatory reasons. Given the evidence (1) that Marriott hired a younger, inexperienced person for the transportation supervisor position and (2) calling into question the real reasons for Riojas's February 2018 writeup, Marriott did not meet its moving burden. (See *Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 315–319 [employee presented sufficient evidence to place in dispute the validity of his employer's performance-based reasons for terminating him].)

Riojas can further assert age discrimination based on two subsequent disciplinary actions that led to his termination. He received a copy of Marriott's "key watcher policy" in 2015, which stated that "[a]ny shift keys that are not turned in at the end of the workday by the associate will result in an automatic written warning." But Riojas questioned Marriott's implementation of the policy. Whereas the younger Rizo lost an entire set of master keys without consequence, Riojas received a written warning for misplacing a single fuel key. Before the writeup, Paulk questioned in an e-mail to management whether key watcher policies were being consistently applied. Similarly, Riojas submitted evidence that only he was disciplined for leaving keys in the ignition, a common practice among drivers.

Evidence that Marriott treated younger employees differently and more favorably may be probative of its discriminatory intent. (See *Guz, supra,* 24 Cal.4th at p. 366.) Nothing in Marriott's proffer suggests that age *could not*

25

be a basis for Riojas's allegedly disparate treatment. Simply stating that his age never came up during meetings discussing his writeups does not foreclose the possibility that those writeups were nevertheless the result of bias or discriminatory intent. Contested factual issues remain about the real reasons Riojas was disciplined and fired, precluding summary judgment.

A similar analysis applies to Riojas's retaliation claim. Marriott's submissions did not rule out the possibility that Riojas received written warnings and was ultimately terminated in retaliation for engaging in protected activity. Bote corroborated Riojas's statements that Marriott supervisors looked for ways to write up Riojas after he filed his first lawsuit. In light of that evidence, Marriott's proffer that Riojas was simply terminated for accumulating three written warnings merely creates, and does not negate, a triable issue of fact. That Riojas's past age discrimination lawsuit or complaints were never expressly mentioned during meetings does not negate the possibility that his employment outcomes nonetheless were the product of unlawful retaliation. Riojas reported perceived retaliation to management in August 2018; two months later, he was fired after misplacing a fuel key. Bote confirmed that only Riojas faced such severe consequences for losing a fuel key or leaving the key in the ignition. It does not matter whether Marriott received notice of Riojas's 2018 EEOC complaint before terminating him—the retaliation claim can rest on the preceding disciplinary violations, as to which there is a triable issue of pretext.

In short, Marriott did not meet its moving burden to show that Riojas could not state a prima facie case of discrimination or retaliation or demonstrate that any reasons for his employment outcomes was pretextual. These causes of action present disputed factual issues requiring a trial.

C.      *Harassment Under FEHA*

A slightly different analysis applies as to Riojas's cause of action for harassment under FEHA. Because there is no permissible justification for workplace harassment, there is no burden-shifting framework for this claim. (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 927 (*Cornell*).) At trial, Riojas would need to show membership in a protected class; unwelcome harassment based on his protected status; interference with his work performance as a result of an intimidating, hostile, or offensive work environment, and liability on the part of the employer. (*Galvan v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 549, 563.) As the party moving for summary judgment, Marriott had to show that he could not establish one or more of these essential elements. (See *ibid.*; *Cornell,* at pp. 924–925.)

The trial court erroneously placed the burden *on Riojas* to establish a causal link between the harassment he faced and his age or protected status. But it made another mistake too. It focused on the termination decision as the basis for the harassment claim when that decision could not, as a matter of law, give rise to a FEHA harassment action.

"In the FEHA, the terms 'discriminate' and 'harass' appear in separate provisions and define distinct wrongs." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 705; see Gov. Code, § 12940, subds. (a), (j)(1).) Whereas FEHA's discrimination provision addresses *official action* taken by the employer "such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action," its harassment provision "focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby*, at p. 706; see *Janken v. GM Hughes Electronics*

(1996) 46 Cal.App.4th 55, 64 (*Janken*) ["the exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment"]; *Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1407 ["A disciplinary suspension does not constitute harassment under FEHA as a matter of law."].)  Consequently, Riojas's harassment claim could not rest on the decision to hire Rizo as supervisor or issue disciplinary writeups to Riojas that resulted in his termination.  Instead, Riojas had to rely on supervisory conduct "outside the scope of necessary job performance" (*Janken*, at p. 63) to assert such a claim.

Riojas alleged three specific incidents of harassment in his complaint that were divorced from any personnel management decisions.  First, he met with Gunderson in June 2018 and expressed interest in the promotion.  Gunderson explained that he would not be considered on account of previous writeups.  When Riojas explained that those writeups were pretextual and retaliatory, Gunderson "became extremely irate and raised his voice, shouting, 'I'm not going to talk about that with you.' "  Riojas felt harassed and threatened by Gunderson's outburst, uneasy with Gunderson's display of anger.  A month later, Gunderson approached him in the breakroom and informed him in an "upbeat and gleeful" tone that he had hired someone else for the supervisor position, making Riojas felt harassed during his lunch break, unable to focus on work, and discounted and humiliated, as if Marriott "took pleasure in treating him worse due to his age."  Finally, in July 2018 when Riojas left keys in a vehicle, "Hanifen berated [him] in the middle of the lobby surrounded by Riojas's co-workers and friends."  Riojas felt that he was being punished based on a Riojas-only policy, as part of a concerted effort to get rid of him.

Without more, these allegations cannot establish harassment. The specific conduct on which the claim is based are neither severe enough nor sufficiently pervasive " 'to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees.' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1043 (*Hughes*).) "There is no recovery 'for harassment that is occasional, isolated, sporadic, or trivial.' " (*Ibid.*)

"Whether the conduct of the alleged harassers was sufficiently severe or pervasive to create a hostile or abusive working environment depends on the totality of the circumstances." (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 951 (*Rehmani*).) Courts distinguish between simple teasing and roughhousing on one hand, and conduct that a reasonable person in the plaintiff's position would find severely hostile or abusive. (*Id.* at pp. 951– 952.) The question is whether the defendant's conduct would have interfered with a reasonable employee's performance and impaired a reasonable employee's psychological well-being. (*Id.* at p. 952.) The three incidents relied on by Riojas do not rise to the level of actionable harassment.

There was a triable issue in *Cornell*, but the court deemed it a "close call." The employee, an obese fitness club employee, alleged her supervisor made four derogatory remarks implying she was overweight, ordered uniforms that were too small, reported her for violating the uniform policy, paid her less than another employee, and denied her extra hours and opportunities. (*Cornell, supra,* 18 Cal.App.5th at pp. 940–941.)[11] The court

---

11    The four statements were as follows: "First, in May 2012, after Cornell reported that it might be a problem to get a properly sized uniform for her because she shopped in specialty stores, [her supervisor] responded by laughing and mockingly saying, ' "Oh yeah, that's right." ' Second, in November 2012, he asked her whether she had thought about having weight-

reasoned that four statements over a span of several months would not, standing alone, create a triable issue of workplace harassment—although hurtful, they were isolated and neither severe nor extreme. (*Id.* at p. 940.) It was those statements in combination with the employer's conduct that pushed the case over the line for purposes of summary judgment. (*Id.* at pp. 940−941; see also *Rehmani, supra,* 204 Cal.App.4th at pp. 957−958 [triable issue existed where employee "offered evidence of a larger picture than just a few interpersonal squabbles" and demonstrated a pattern of "rudeness, taunting, and intimidation" on the basis of his national origin or religion].)

This case falls well on the other side of the line. Riojas complains of three statements spanning several months that have nothing overtly to do with his age or prior age discrimination complaints. Even if these remarks were made against the backdrop of allegedly pretextual employment actions, they do not rise to the level of severity or pervasiveness required to permit a reasonable jury finding of harassment. Summary adjudication is therefore proper as to this cause of action.

D.    *Whistleblower Retaliation (§ 1102.5)*

Section 1102.5 protects whistleblowers in the workplace. (See generally, *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709 (*Lawson*).) The statute "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77.) Subdivision (b) of section 1102.5 prohibits employers from retaliating

---

loss surgery. Finally, she once heard him tell the kitchen staff not to give her extra food because ' "she doesn't need it" ' and once told her that she did not ' "need to eat that." ' " (*Cornell, supra,* 18 Cal.App.5th at p. 940.)

against their employees who report reasonably based suspicions of illegal activity either internally or to outside authorities.[12]

Violations subject an employer to civil penalties (§ 1102.5, subd. (f)) and attorney's fees (*id.* subd. (j)). Aggrieved employees may also file an action for damages. (§ 1105.) At trial, an employee must show "an activity proscribed by Section 1102.5 was a contributing factor" to an adverse employment action. (§ 1102.6.) This shifts the burden to the employer to prove by clear and convincing evidence that the alleged adverse action would have occurred for legitimate, independent reasons even if the employee had not made the report. (*Ibid.*; *Lawson, supra,* 12 Cal.5th at p. 712.) By contrast, Marriott bears the burden on summary judgment to prove that the cause of action has no merit or is barred by a defense. (Code Civ. Proc., § 437c, subds. (a), (f).)

Riojas alleges in his complaint that he was fired because he complained about age discrimination and retaliation, as well as for reporting "what he reasonably believed to be unsafe working conditions in violation of DOT regulations . . . ." We construe those two theories separately.

As to his complaints about discrimination and retaliation, Riojas avers in his complaint that during a June 2018 meeting, when he expressed interest in promotion and claimed his past writeups were retaliatory, Gunderson grew irate. Gunderson thereafter hired someone younger for transportation supervisor, while Riojas received two more writeups leading to his termination. Adding further details in his declaration, Riojas claims he complained of retaliation in August 2018 to Rizo, the younger transportation

---

[12] Originally, whistleblower protection covered only reports to government or law enforcement agencies. Since January 1, 2014, the statute also protects those who report violations *internally* "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." (Stats. 2013, ch. 781, § 4.1 (Sen. Bill No. 496).)

supervisor Gunderson had just hired, questioning why Rizo had reported him for leaving keys in the ignition in a parked company vehicle.[13]

Since 2014, section 1102.5, subdivision (b) has protected not merely reports to government agencies but also *internal* disclosures by an employee "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation . . . or noncompliance." (See Stats. 2013, ch. 781, § 4.1 (Sen. Bill No. 496) effect. Jan. 1, 2014).) Previously the law was unsettled whether telling an employer or supervisor about alleged violations they already knew about amounted to a protected "disclosure" within the meaning of section 1102.5. While this appeal was pending, the Supreme Court answered that question in the affirmative. (*People ex rel. Garcia-Brower v. Kolla's, Inc.* (May 22, 2023, S269456) 2023 Cal. Lexis 2768, at pp. *29–*30 (*Kolla's, Inc.*).)[14] Under *Kolla's, Inc.*, Riojas can properly rest his section 1102.5 claim on internal complaints of discrimination and retaliation, even if Marriott, Gunderson, or others hearing the complaints were already aware of their contents.

---

[13]     Riojas further states in his declaration that during an August 2018 department meeting, he complained to human resources director Bell that he was "passed over for external hires in violation of Marriott's internal hiring guidelines . . . due to [his] age." It is unclear if he makes this factual allegation in connection with his whistleblower retaliation claim. To the extent he does, disclosing a violation of internal hiring policies is not protected activity under section 1102.5, subdivision (b). " 'To have a reasonably based suspicion of illegal activity, the employee must be able to point to some legal foundation for his suspicion—some statute, rule or regulation which may have been violated by the conduct he disclosed.' " (*Ross v. County of Riverside* (2019) 36 Cal.App.5th 580, 592.)

[14]     After oral argument, we invited the parties to submit supplemental letter briefs addressing the impact of *Kolla's, Inc.*

Marriott offered three reasons why this theory of Riojas's section 1102.5 claim failed.  First, it argued Riojas could not rely on pre-settlement conduct—a contention we have already rejected.  Next Marriott claimed it could not have retaliated for an EEOC complaint that it learned about *after* firing Riojas—but this overlooks the other *internal* complaints of age discrimination and retaliation preceding his termination, complaints that *Kolla's, Inc.* makes clear are protected. Finally, Marriott argued on reply that any postsettlement writeups were made for legitimate violations of Marriott policies, and that he was terminated for performance reasons.  But this merely raises fact questions as to the real reasons for Riojas's adverse treatment.  Ultimately, triable issues preclude summary judgment to the extent Riojas's whistleblower retaliation claim rests on internal reports of age discrimination and retaliation.

Riojas would also appear to have a valid whistleblower retaliation claim based on his second theory that he was fired after making safety complaints about Marriott personnel driving commercial vehicles without the proper license.  Riojas obtained a CDL in 2016 and soon learned that driving without a CDL on public roads violated CHP regulations.  Around January or February 2018, he complained of safety violations to Gunderson; Gunderson passed these on to other managers with a comment that a CDL was not needed on private property, and he (Gunderson) could not understand why Riojas "keeps harping on it."[15]  After the May 2018 settlement, Riojas met with Gunderson and revisited past conversations "regarding supervisors driving vehicles illegally without a CDL on public roads."  Gunderson grew angry and told Riojas he did not remember any such conversations from the

---

[15]  These presettlement communications may provide context without forming the basis for Riojas's whistleblower claim.

previous year. A week later, Marriott posted the supervisor position and would not let Riojas apply. Riojas would go on to accumulate two more writeups, which he claimed were pretextual, and eventually was fired.

Multiple fact questions preclude summary adjudication on a whistleblower cause of action resting on these safety complaints. Riojas proffered deposition testimony by Gunderson admitting that if Hanifen had in fact driven guests on public roads without a CDL in a company vehicle as Riojas claimed, that would have violated the law or applicable regulations. A CHP officer additionally confirmed in an e-mail that Marriott drivers needed valid CDLs to drive buses. Riojas was written up and ultimately terminated after repeatedly raising these concerns, creating a triable issue of whether his complaints were a contributing factor. And testimony by Riojas and Bote create a further triable issue as to whether Riojas's last two written warnings (for leaving the key in the vehicle and losing a fuel key) were pretextual. On this record, Marriott has not demonstrated that Riojas will be *unable* to show that any safety complaints about CDL concerns raised after the May 2018 settlement contributed to his eventual termination. Summary judgment on the whistleblower retaliation cause of action is therefore unwarranted.

E.    *Derivative Claims*

The operative complaint avers two derivative claims—failure to prevent discrimination, harassment, and retaliation in violation of FEHA and wrongful termination in violation of public policy. As we explain, those claims may proceed to the extent their predicate FEHA and whistleblower retaliation claims survive summary judgment.

34

1. *Failure to prevent discrimination, harassment, and retaliation in violation of FEHA*

FEHA requires employers to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." (Gov. Code, § 12940, subd. (k).) This duty extends to preventing retaliation. (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1240.) Because it is derivative in nature, a cause of action for failure-to-prevent discrimination, harassment, or retaliation under FEHA requires proof of actual discrimination, harassment, or retaliation. (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1315.) Having concluded that Marriott failed to carry its moving burden as to Riojas's age discrimination and retaliation claims, the associated failure-to-prevent claim may likewise move forward.[16] By contrast, because we found no triable issue as to Riojas's harassment claim, the failure-to-prevent claim cannot be predicated on workplace harassment. An employer cannot be held liable for failing to prevent harassment where no actionable harassment has occurred. (*Dickson,* at p. 1315.)

2. *Wrongful termination in violation of public policy*

As an exception to an employer's general broad authority to discharge an at-will employee, California recognizes a common law tort claim for damages "when an employer's discharge of an employee violates fundamental

---

16 Marriott asserts that its corporate policies prohibited discrimination and harassment and created complaint procedures for all employees. But those policies merely create a fact question of whether Marriott took all reasonable steps to prevent discrimination, retaliation, and harassment as required by statute. (Gov. Code, § 12940, subd. (k).) The mere existence of corporate policies does not mean that Marriott investigated, addressed, and prevented such conduct in the workplace, and Riojas disputed Marriott's diligence in investigating his complaints.

principles of public policy." (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 (*Tameny*); see *Kelly v. Methodist Hospital of Southern Cal.* (2000) 22 Cal.4th 1108, 1112 ["*Tameny* claims permit wrongful termination damages when a termination is undertaken in violation of a fundamental, substantial and well-established public policy of state law grounded in a statute or constitutional provision."].) The implicated public policy " 'must be: (1) delineated in either constitutional or statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental.' " (*City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1159.)

Riojas bases his *Tameny* claim on underlying violations of FEHA and section 1102.5. Both can form the basis for a common law wrongful termination claim. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885 [FEHA]; *Siri v. Sutter Home Winery, Inc.* (2019) 31 Cal.App.5th 598, 604 [section 1102.5].) Marriott argued, and the court agreed, that this claim failed because Riojas could not establish a predicate violation. As we explained above, Riojas's claims for age discrimination and retaliation under FEHA demonstrate triable issues. The same is true for his whistleblower retaliation claim. Accordingly, the *Tameny* claim may likewise proceed to the extent it rests on those underlying claims. (See *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 472.)

F. *Intentional Infliction of Emotional Distress*

Finally, Riojas alleged a tort claim for IIED. This requires proof of (1) extreme and outrageous conduct by a defendant intending to cause or recklessly disregarding the risk of causing emotional distress, (2) severe or extreme emotional distress, and (3) a causal link between the two. (*Hughes,*

36

*supra,* 46 Cal.4th at p. 1050.) The alleged conduct must be so extreme that it exceeds the bounds tolerated in a civilized community. (*Id.* at pp. 1050–1051.) No liability lies where a plaintiff alleges " 'mere insults, indignities, *threats*, annoyances, petty oppressions, or other trivialities' . . . . There is no occasion for the law to intervene in every case where some one's feelings are hurt." (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496; see *Hughes*, at p. 1051, quoting Rest.2d Torts, § 46, com. d.) Beyond showing sufficiently extreme conduct, a plaintiff must have suffered emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it. (*Hughes*, at p. 1051.)[17]

Riojas bases his IIED claim on the following conduct: (1) a June 2018 meeting with Gunderson in which Gunderson raised his voice and refused to discuss whether Riojas's past writeups were pretextual; (2) two subsequent writeups for unequally applied policies; and (3) Riojas's eventual termination after he filed an EEOC complaint. His complaint alleges harm in the form of "humiliation, emotional distress, and mental and physical pain and anguish." His declaration specifies that he experienced "depression, anxiety and increased stress levels."

We agree with the trial court that this proffer fails to show a triable issue as to the IIED. Angry remarks from a supervisor followed by allegedly unfair disciplinary actions do not amount to extreme or outrageous conduct.

---

[17] Neither element was shown in *Hughes*, making summary judgment proper. In the context of a five year legal battle over the allocation of trust funds, a defendant's inappropriate comments fell far short of outrageous. (*Hughes, supra,* 46 Cal.4th at p. 1051.) Moreover, plaintiff's assertions of "discomfort, worry, anxiety, upset stomach, concern, and agitation" from the defendant's remarks were not sufficiently severe to support tort liability. (*Ibid.*)

(See *Schneider v. TRW, Inc.* (9th Cir. 1991) 938 F.2d 986, 992–993 [applying California law, summary judgment was proper on IIED claim where supervisor screamed, yelled, and made threatening gestures while criticizing plaintiff's job performance and unfairly blaming her for a mistake—such conduct was rude and insensitive, but not outrageous].)  And allegations of depression, anxiety, and stress are akin to those deemed insufficiently severe in *Hughes* to support a cause of action for IIED.  (*Hughes, supra,* 46 Cal.4th at p. 1051.)

## DISPOSITION

The judgment is reversed with directions to vacate the order granting summary judgment and enter a new order consistent with this opinion along the following lines:

1.  Sustaining Riojas's foundation objection to exhibits 14, 20, 21, and 28 to the declaration of Kamran Mirrafati.  (Riojas objections 8, 14–15, 22.)

2.  Overruling Marriott's relevancy objections to contextual facts contained in the declarations of Michael Riojas and Joel Bote that predate the May 2018 settlement agreement.  (Marriott objections 36–62, 70-73.)

3.  Denying summary adjudication as to the first cause of action for age discrimination under FEHA and the third cause of action for retaliation under FEHA.

4.  Granting summary adjudication as to the second cause of action for harassment under FEHA.

5.  Granting in part and denying in part summary adjudication as to the fourth cause of action for failure to prevent discrimination, harassment, and retaliation in violation of FEHA, allowing that claim to proceed to the extent it rests on age discrimination or retaliation under FEHA, but not to the extent it rests on harassment.

6. Denying summary adjudication as to the sixth cause of action for whistleblower retaliation under section 1102.5.

7. Granting in part summary adjudication as to the fifth cause of action alleging a *Tameny* claim for wrongful termination in violation of public policy, but only to the extent that cause of action rests on harassment under FEHA.

8. Granting summary adjudication as to the seventh cause of action for intentional infliction of emotional distress.

As the prevailing party on appeal, Riojas is entitled to recover his costs on appeal.


DATO, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.